166 So. 65

Succession of BERTHELOT.

No. 33605.

Feb. 3, 1936.

K. V. Richard, of New Orleans, for appellee.

James N. Brittingham, Jr., of New Orleans, for appellant.

HIGGINS, Justice.

Plaintiff, a widow by second marriage, instituted this action against the defendants, legatees and the executor under an olographic will of her deceased husband, dated September 8, 1933, to have the probate proceedings annulled and set aside, and a purported olographic will dated March 31, 1934, probated as the last will and testament of

the deceased and to be confirmed as the executrix thereof.

The defense is that the will dated September 8, 1933, is the last will and testament of the de cujus and that the purported will of March 31, 1934, although in the handwriting of the deceased is a forgery because some one, subsequent to the execution of the will, changed the date thereof from March 31, 1931, to March 31, 1934, by making a cross-mark and connecting it with the figure "1," in order to make it appear as the figure "4."

There was judgment in favor of the plaintiff as prayed for, and the case was brought here on a suspensive appeal.

The evidence shows that Paul Berthelot had been married twice; that of his first union there was issue of one daughter; that there was no issue of the second marriage, but his wife had several daughters, issue of a previous marriage; and that he, his second wife, and stepchildren all resided together in the city of New Orleans.

During March, 1931, Mr. Berthelot went to the office of his attorney, Mr. Fredrick A. Middleton, who had been handling his legal affairs for about thirty years, and expressed his desire to make a will. The attorney, in accordance with Mr. Berthelot's instructions, wrote out a form for an olographic will, which the deceased copied entirely in his own handwriting, and, upon leaving Attorney Middleton's office, took the document with him.

On September 8, 1933, Mr. Berthelot wrote another olographic will, revoking all previous testaments, and placed the same,

together with other valuable papers, in the iron safe of Mr. Albion L. Middleton, who shared offices with Attorney Middleton.

On Mardi Gras night, February 14, 1934, Mr. Berthelot was seriously injured when struck by a street car, at the crossing of Magnolia street and Napoleon avenue, this city, and was taken to the home of his godchild, Mrs. J. L. Clesi, at No. 518 First street, where he remained for about a week, confined to bed, and was thereafter removed, in an ambulance, by plaintiff, his wife, to their residence, No. 7811 Green street. He was confined to his bed at home for about four weeks. During the latter part of March, 1934, he was able to leave his home and go about the streets, alone. Some time during June, 1934, he went to Bay St. Louis, Miss., and subsequently was brought back to New Orleans, where he died in the hospital on August 14, 1934.

On August 21, 1934, George N. Gendron, the husband of the daughter by his first marriage, who was named as the executor in the will of September 8, 1933, and Mr. Middleton, the attorney named in the will to open and close the succession of the deceased, presented that will to the district court, in order to have it probated and the executor qualified. This proceeding was regular and an inventory was taken on October 4, 1934, of the separate estate of the deceased, amounting to $15,274.65.

On or about December 6, 1934, plaintiff found, in her armoire at home, the purported will of March 31, 1934, and delivered it to her attorney, who in turn presented it to Fredrick A. Middleton, for the purpose of having it probated, as Mr. Middle-ton was also named as the attorney to open and settle the estate therein. Mr. Middleton immediately informed plaintiff's attorney that the will appeared to him to be a forgery and refused to present it for probate. The present suit followed.

The two wills are alike in that Louise Alice Gendron, wife of George N. Gendron, daughter of his first marriage, is bequeathed one-third of his estate, and Pauline Hotard, wife of Charles L. Franck, is bequeathed one-sixth of the estate, and that Fredrick A. Middleton is appointed as attorney to open and settle the succession. The differences between the testaments are that plaintiff is named as executrix in the will of March 31, 1934, whereas George N. Gendron is appointed as executor in the will of September 8, 1933; "Pearl Berthelot, wife of Peter Brue," is bequeathed one-sixth of the estate in the will of September 8, 1933, and bequeathed one-third of the estate in the will of March 31, 1934, under the name of "Pearl Adele Hotard," which was plaintiff's surname prior to her marriage to the deceased; and in the will of September 8, 1933, one-sixth is bequeathed to Louis Hotard, May Hotard, wife of Charles Voegle, and Miss Theresa Kates, in equal proportions, whereas, in the purported will of March 31, 1934, he omits all of the last-named legatees.

In support of the validity of the testament of March 31, 1934, plaintiff testified that it was entirely written, dated, and signed in the handwriting of her husband, and that she had found it in her armoire in their bedroom at home about December 6, 1934, and delivered it to her attorney. She

specifically stated that the figure "4" in the date also appeared to be in the handwriting of her husband, but she did not say that she saw her husband write the will, although he was confined to his bed and at home during the greater part of the month of March.

Mrs. Blanche Hotard, wife of Dr. Amedee Mary, stated that she was familiar with her stepfather's handwriting and that the will was entirely written, dated, and signed in his handwriting, and that she was also sure that he wrote the figure "4" in the date. She corroborated her mother's statement that the deceased had been injured and was confined to his bed at home for several weeks. Charles L. Franck, husband of Pauline Hotard, stepson-in-law, gave similar testimony.

Wheaton C. Stillson, expert on handwriting, testified that he had examined the date of the will with a powerful magnifying glass and that the figure "4" in the date was not tampered with and had been written with the same pen and ink as the rest of the will. He accounted for the differences in the shade of the ink on the first downward stroke in the figure "4" from the balance of it on the ground that more ink was deposited there than on the downward initial stroke of the pen. He further stated that, while the figure "4" appeared irregular, this was due to the unsteady hand of the deceased, who was advanced in years.

Mrs. J. L. Clesi, godchild of the deceased, testified that the deceased visited, ate his meals, and slept at her home during the extreme latter part of March, 1934, and that with the exception of absenting himself be-

tween 9:30 a. m. and 5:00 p. m., he was at her home on March 31, 1934, the day before Easter Sunday, which was on April 1, 1934, having given her little girl money with which to buy Easter eggs; and that she did not see him write any will or testament on March 31, 1934, nor did he ask for ink and paper for the purpose of writing anything.

Mrs. Albion Middleton, who was the secretary for her husband who was engaged in the insurance business, having joint offices with Attorney Fredrick A. Middleton, testified that she acted as secretary for Mr. Berthelot; that during the latter part of March, 1934, and up until the time of Mr. Berthelot's death, due to his advanced age of 75 years, as well as the severe injury which he had suffered when struck by the street car, he was unable to write a check; that she had to write the checks and assist him in signing them, and, in spite of her efforts, several times he spoiled the check in attempting to place his signature thereon; that the will of September 8, 1933, was left by the deceased, together with other valuable papers, in her husband's office, in her care, and that he at all times referred to it as his will; that, while the will of March 31, 1934, appeared to be in the handwriting of the deceased, she was positive that due to his weak physical condition, he could not have written the will of March 31, 1934.

Mrs. George N. Gendron testified that her father was 75 years of age and died on August 14, 1934, at midnight.

Fredrick A. Middleton, the attorney named in both wills, testified that he had

been the attorney for Paul Berthelot for about thirty years; that during 1931 his client requested him to make out the necessary form because he desired to make a will particularly on account of having been married twice; that he wrote out a form of an olographic will, in accordance with the testator's wishes, and Mr. Berthelot then copied it in his own handwriting, thereafter taking it with him when he left the office; that the will of September 8, 1933, and other valuable papers were placed in the custody of Albion Middleton and his wife, who shared offices with him; that the deceased visited his office regularly, but never mentioned any other will; that the deceased was injured on Mardi Gras night, or February 14, 1934 and died on August 14, 1934; that, as he had been named as attorney in the will, to settle the estate, he and Mr. George N. Gendron, the executor named therein, presented the will of September 8, 1933, for probate, which proceedings were carried out regularly; that some time during December, 1934, the attorney for the plaintiff presented the purported will of March 31, 1934, which he immediately pronounced as a forgery, because he knew that the physical condition of the deceased was such that he could not have written the will at that date in the steady legible handwriting in which it appeared; that, if any one had walked into his office with the document, he would have declared it to be the same will which he drafted and had the deceased copy in 1931, because he remembered that the provisions were very similar, but, as he did not remember the exact date and it was possible that the deceased, having taken the will away with him, could have recopied

it at a later date, he would not positively swear that this was the same will or document; that he was certain the will was a forgery, because it was incredible that the deceased could have written it with such a steady hand, in view of his decrepit and weakened condition; that he refused to have it submitted for probate and referred it to Prof. Spencer, with the consent of plaintiff's counsel, to have his opinion corroborated; that he subsequently discovered, to his satisfaction, that the date had been changed from 1931 to 1934, by making a cross-mark and connecting it with the figure "1," and requested Prof. Spencer to especially examine and study that cipher; and that Prof. Spencer confirmed him in his view that the figure had been altered and changed.

Prof. L. C. Spencer, handwriting expert of many years' experience, and who testified in a number of cases in court, stated that he had critically examined the figure "4" under a magnifying glass, and that the first downward stroke was in dark blue ink, whereas the balance of the figure, the horizontal and vertical strokes, or cross part of the figure "4," was in black ink; that it was plainly visible that some one subsequently, with a different pen and ink, added the cross part of the "4," particularly since the lower part of the initial stroke with the blue ink protruded below the horizontal line that joined it; and that he, therefore, concluded that the will was a forgery.

Counsel in the case have kindly furnished us with several powerful magnifying glasses, and each member of the court has care-

fully examined the figure "4." It appears to us that the description given by Prof. Spencer is accurate, his observations being clearly visable with the aid of magnifying glasses.

It likewise appears to us that it would have been physically impossible for the deceased to have written a will on March 31, 1934, in the steady, clear handwriting which appears in the purported will of that date, because, in the will of September 8, 1933, the handwriting appears to be that of a person of an unsteady hand, and this is particularly true in view of the fact that the uncontradicted testimony is that the deceased had been badly injured on February 14, 1934, and had been confined to his bed for about four weeks, and thereafter he was in a weak physical condition. Our view in this respect is further supported by virtue of the fact that deceased was 75 years old during March, 1934, and feeble.

We further note that in the will of September 8, 1933, there is a provision revoking all previous wills and testaments. The purpose of that clause was to revoke the will of 1931, which Mr. Middleton had assisted the deceased in drafting. In the purported will of March 31, 1934, there is no clause revoking previous testaments.

In the purported will of March 31, 1934, the bequest of one-third of the estate is in favor of "Pearl Adele Hotard," who had been married in 1932 to Peter Brue. In the will of September 8, 1933, this same young lady was bequeathed one-sixth of the estate under the name of "Pearl Berthelot, wife of Peter Brue." In other words, since the young lady was married in 1932, her father properly referred to her under her marriage name in the will of 1933, and we can see no good reason why, if the will of March 31, 1934, was genuine, he would have referred to her by her maiden name. We are fortified in this thought because in the will of 1933 the testator, in referring to his step-daughters, as well as his own daughter, gives their marriage names and their husbands' names. We also note that although Blanche Hotard was married on December 1, 1933, to Dr. Amedee Mary, according to her own testimony, in the purported will of March 31, 1934, she is referred to under her maiden name "Blanche Hotard," and in the will of September 8, 1933, which was before her marriage to Dr. Mary, the testator refers to her by her maiden name.

We are told that there is an old Chinese proverb to the effect that one look is better than a thousand words. This expression appears to us to be applicable here.

After giving studious consideration to the evidence and making a thorough examination of the documents, it is our opinion that the preponderance of the evidence shows that the purported will of March 31, 1934, is a forgery, in that the date was changed from "1931" to "1934."

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from is annulled and set aside, and the probate proceedings under the will of September 8, 1933, and the confirmation of George N. Gendron, as testamentary executor of that testament, are rein-

stated with the same legal effect and status that existed at the time this action was instituted on December 28, 1934; plaintiff to pay the costs of both courts.